# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

JOETTA HEARING,

             Plaintiff,

vs.

MINNESOTA LIFE INS. CO.,

             Defendant,

vs.

NIKOLE C. HOLLOWAY,

             Third-Party Defendant.

No. C13-4101-LTS

**ORDER**

_____

## TABLE OF CONTENTS

I.     INTRODUCTION.................................................................... 2

II.    BACKGROUND..................................................................... 2

III.   ANALYSIS ............................................................................ 4
     A.    *The Motion to Deposit Funds* ...................................... 4
          1.    *Is Interpleader Appropriate?* ............................... 4
          2.    *Attorney Fees and Costs*...................................... 10
              a.    *Legal Standard* .................................... 10
              b.    *Discussion* ........................................... 12
     B.    *The Motion to Dismiss/Motion for Summary Judgment* ................. 14
          1.    *Arguments of the Parties* ..................................... 14
          2.    *Applicable Standards* ........................................ 16
          3.    *Undisputed Facts* ............................................. 17
          4.    *Discussion* ...................................................... 18

IV.   CONCLUSION ...................................................................... 25

## I. INTRODUCTION

This case is before me on: (a) a motion (Doc. No. 18) by defendant Minnesota Life Insurance Company (Minnesota Life) to deposit interpleader funds, recover attorney fees and costs and for dismissal with prejudice; and (b) a motion (Doc. No. 22) by plaintiff Joetta Hearing (Hearing) to dismiss counterclaim, or in the alternative, for summary judgment. Both motions are resisted. I held a telephonic hearing on July 8, 2014. Attorney Theodore Karpuk appeared for Hearing, attorney Molly Hamilton Cawley appeared for Minnesota Life and attorney David Watermeier appeared for third-party defendant Nikole Holloway (Holloway). The motions are fully submitted.

## II. BACKGROUND

Jon Holloway (Jon) purchased a life insurance policy from Minnesota Life in 1998. He died on June 28, 2013. The policy designated Hearing, who is Jon's sister, as the beneficiary. On or about July 8, 2013, Minnesota Life received correspondence from Holloway (who is Jon's daughter) disputing the beneficiary designation. She claimed the decree that dissolved Jon's marriage required that he maintain the life insurance policy for Holloway and, further, that Jon had named Holloway as the intended beneficiary of the policy in a signed handwritten note.

The dissolution decree, entered in 1998, directed Jon to pay child support in the amount of $225 per month ". . . until the minor child, Nikole, reaches the age of 18 or graduates from high school, whichever is later." Doc. No. 33-1 at 9. The decree also required that Jon "maintain life insurance on his life in the sum of $100,000, payable to the children as equal beneficiaries until his support obligation is closed."[1] Doc. No. 33-1 at 10. Jon's life insurance application contains the following notation: "Naming sister

---

[1] Hearing contends the insured's support obligation actually ended on January 1, 2000, pursuant to a court-approved stipulation. Doc. No. 33 at 4.

as beneficiary so wife can't control the death proceeds." Doc. No. 24-2 at 3. Holloway reached the age of 18 in July 2008 and is Jon's only surviving child.

The signed handwritten note is dated September 18, 2012, and is addressed to "Nikki." It states in relevant part, "Chris would like the 44 back, the rest you get." The end of the note lists the life policy number and the contact information for Jon's Minnesota Life agent. It also lists information for other financial accounts and contains publicity and funeral requests. Doc. No. 10-1 at 1.

The policy contains the following provision regarding how to change a beneficiary:

> Can you change the beneficiary?
>
> Yes. If you have reserved the right to change the beneficiary, you can file a written request with us to change the beneficiary. If you have not reserved the right to change the beneficiary, the written consent of the irrevocable beneficiary will be required.
>
> Your written request will not be effective until we record it in our home office. After we record it, the change will take effect as of the date you signed the request. However, if the insured dies before the request has been so recorded, the request will not be effective as to those death proceeds we have paid before your request was so recorded.

Doc. No. 20 at 15. Minnesota Life has no record that Jon ever changed Hearing as the policy's designated beneficiary.

After receiving notice of Holloway's claim to the life insurance proceeds, Minnesota Life advised the parties of their competing claims and asked them to reach an agreement as to the disbursement of those proceeds. The parties were unable to agree. Instead, on October 8, 2013, Hearing filed a petition against Minnesota Life in the Iowa District Court for Woodbury County seeking an order directing Minnesota Life to pay the proceeds to her immediately. Doc. No. 3. Minnesota Life timely removed the action to this court based on diversity jurisdiction and filed an answer, counterclaim and third-

party complaint for interpleader in accordance with Federal Rule of Civil Procedure 22 and 28 U.S.C. § 1335. The third-party complaint added Holloway to this case as the other party asserting entitlement to the insurance proceeds. Doc. No. 6. Holloway then filed an answer and counterclaim in which she asked that Hearing's claim be dismissed and that Minnesota Life be directed to pay the proceeds to her. Doc. No. 10.

During discussions about the proposed scheduling order and discovery plan in February 2014, Minnesota Life advised the other parties that it wanted to deposit the insurance proceeds with the Clerk and be dismissed from the case to avoid incurring additional fees and costs, which would be taken from the proceeds. Doc. No. 18 at 17. Holloway was agreeable to such a stipulation, but Hearing was not. *Id.* at 18. Minnesota Life submitted its Rule 26(a)(1) disclosures on March 11, 2014, and renewed its request for the parties to stipulate to Minnesota Life depositing the proceeds with the court and being dismissed from the action. *Id.* at 20. Again, Holloway agreed to the stipulation, but Hearing objected. *Id.* at 28-30.

In her resistance to the motion to deposit funds and in her motion to dismiss/motion for summary judgment, Hearing argues interpleader is unnecessary because Holloway's counterclaim fails to state a claim upon which relief can be granted. She objects to an award of attorney fees and costs to Minnesota Life altogether and alternatively, to the amount Minnesota Life has requested. Holloway does not object to the use of interpleader or Minnesota Life's requested attorney fees and costs. She has filed a resistance to Hearing's motion to dismiss/motion for summary judgment.

## III. ANALYSIS

### A. The Motion to Deposit Funds

#### 1. Is Interpleader Appropriate?

"Interpleader is a procedural device whereby a party holding money or property concededly belonging to another may join in a single suit two or more parties asserting

mutually exclusive claims to the fund.  The stakeholder is thereby freed from the threat of multiple liability and/or the vexation of multiple lawsuits." *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1141 (8th Cir. 1976) (citing 3A Moore's Federal Practice P 22.02(1) (1974)).  Minnesota Life brings this interpleader action pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22.  The federal interpleader statute provides:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

> (b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335. Jurisdiction is appropriate based on this statute as the amount at stake ($92,938.14)[2] is over $500 and at least two of the parties are diverse (Doc. No. 2).[3] Interpleader is also addressed by Rule 22:

> (a) Grounds.
>
> (1) *By a Plaintiff.* Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:
> (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or
> (B) the plaintiff denies liability in whole or in part to any or all of the claimants.
>
> (2) *By a Defendant.* A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.
>
> (b) Relation to Other Rules and Statutes. This rule supplements--and does not limit--the joinder of parties allowed by Rule 20. The remedy this rule provides is in addition to--and does not supersede or limit--the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. An action under those statutes must be conducted under these rules.

Fed. R. Civ. P. 22. It is undisputed that Minnesota Life asserts no claim to the proceeds. However, Hearing objects to the interpleader action because she asserts Holloway's claim to the proceeds is so completely devoid of merit that Minnesota Life cannot reasonably claim fear of exposure to double liability.

---

[2] Jon took a partial cash surrender of $7,100 on February 27, 2012, reducing the death benefit to $92,900. Doc. No. 33-1 at 18-25, 48. Minnesota Life contends $92,938.14 represents the death benefit and accrued interest. Doc. No. 6 at 6.

[3] Subject matter jurisdiction also arises under 28 U.S.C. § 1332 as the parties are all citizens of different states and the amount in controversy exceeds $75,000. *See* Doc. Nos. 6, 8, 10.

Normally, the respective merits of each party's claim to the proceeds is not a sufficient reason for prohibiting interpleader. *See Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 556 (8th Cir. 1940) ("the jurisdiction of a federal court to entertain a bill of interpleader is not dependent upon the merits of the claims of the defendants . . . ."). However, Hearing cites *Protective Life Ins. Co. v. Kridner*, CIV. 12-582 JRT/JJG, 2013 WL 1249205 (D. Minn. Mar. 27, 2013), to argue that interpleader is inappropriate here due to the alleged lack of merit of Holloway's claim. In *Kridner*, one defendant objected to an award of attorney fees to the interpleader plaintiff, arguing the competing claim to the proceeds was frivolous and the insurance company could have resolved the issue without resorting to interpleader. *Kridner*, 2013 WL 1249205, at *3. The court had previously determined that interpleader was appropriate based on the fact that there were competing claims. *Id.* The court noted that the defendant's argument about the merits of the competing parties' claims went to "the propriety of an interpleader action in the first instance, and not to whether the interpleading plaintiff is entitled to attorney fees." *Id.* (citing *Irwin v. Principal Life Ins. Co.*, 404 F. Supp. 2d 1271, 1279 (D. Kan. 2005)).

The objecting defendant in *Kridner* had not opposed the prior motion to deposit funds. *Id.* The court stated that even if it were to reconsider its ruling on that motion, it would still find that interpleader was appropriate because of the competing claims. It reasoned that "[a] stakeholder need not believe that all of the claims asserted against a fund are meritorious in order to maintain an interpleader action." *Id.* at *3-4 (citing *Hunter*, 111 F.2d at 556 and *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012)). The court found it was enough for the insurance company to have "a reasonable fear of exposure to double liability," which had been established by facts showing the competing claimants were represented by an attorney, made claim to the proceeds, refused to settle the dispute and raised questions of whether California or Idaho law applied. *Id.* at *4. The court ultimately found the insurance company was entitled to an award of attorney fees and costs in bringing the interpleader action. *Id.*

Relying on *Kridner*, Hearing objects to Minnesota Life's motion to deposit funds – and thus contests Minnesota Life's request for attorney fees and costs – by arguing that Holloway's claim is too weak to support interpleader relief. While the procedural posture of her objection may be appropriate, I find Hearing has failed to demonstrate that Minnesota Life lacks a reasonable fear of exposure to double liability. Courts have found there is no reasonable fear of exposure to double liability only when there are not two *bona fide* competing claims to the proceeds. *See John Hancock Mut. Life Ins. Co. v. Beardslee*, 216 F.2d 457 (7th Cir. 1954) (finding interpleader was not appropriate when one party's only possible legal claim was not a claim to the proceeds, but a possible tort action against the insurance company); *Bierman v. Marcus*, 246 F.2d 200 (3d Cir. 1957) (finding misuse of interpleader when the interpleading parties controlled one of the competing parties and knew it had no claim to the funds and could not assert a claim without their consent); *Francis I. duPont & Co. v. O'Keefe*, 365 F.2d 141 (7th Cir. 1966) (finding interpleader inappropriate when only one of the competing parties claimed entitlement to the funds and all other "competing" parties asked that funds be paid to the party claiming entitlement). Unless the issue is jurisdictional or a party alleges the stakeholder acted in bad faith, courts only require that adverse claims meet "a minimal threshold of substantiality," meaning the actual or potential adverse claim "must be at least colorable." *Michelman*, 685 F.3d at 894-95.

Hearing does not allege the court lacks jurisdiction or that Minnesota Life has acted in bad faith. She also does not dispute that Holloway is making a claim to the proceeds. Hearing's objection to interpleader is based solely on the merits of Holloway's claim. Even if Holloway's claim could not survive a motion to dismiss, this does not mean Minnesota Life lacks a "real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *See id.* ("Interpleader is appropriate where the stakeholder reasonably fears that there may be multiple parties with colorable adverse claims to the stake."). The *Michelman* court noted:

> Of course, the claims of some interpleaded parties will
> ultimately be determined to be without merit. That, however,
> is the very purpose of the proceeding and it would make little
> sense in terms either of protecting the stakeholder or of doing
> justice expeditiously to dismiss one possible claimant because
> another possible claimant asserts the claim of the first is
> without merit.

*Id.* at 784-85 (quoting *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008)). The court went on to explain that in a previous case it held that interpleader was proper even though the district court had disposed of an adverse claim. *Id.* at 895. The court reasoned the dismissal did not make interpleader improper "because the district court could not have made that determination without first addressing the claim's merits." *Id.* at 895-96. "[E]valuating a claim's merits before determining that interpleader is appropriate is backwards of the usual order, and would defeat the resource-conservation purposes of interpleader." *Id.*

Here, Holloway's claim is at least colorable such that Minnesota Life could have a real and reasonable fear of exposure to double liability. Shortly after the insured's death, Holloway contacted Minnesota Life disputing the beneficiary designation. She provided Jon's dissolution decree and a copy of the signed handwritten note, both of which arguably suggest Holloway was the intended beneficiary of the policy. Holloway is represented by an attorney. Rather than immediately filing an interpleader action, Minnesota Life asked the parties to reach an agreement as to the payment of the proceeds. Hearing filed this action after the parties were unable to agree. Under these circumstances, it was reasonable and appropriate for Minnesota Life to then remove the action to this court and seek interpleader relief. For these reasons, Minnesota Life's motion to deposit funds will be granted.

## 2.    *Attorney Fees and Costs*

### a.    *Legal Standard*

Minnesota Life seeks to recover the attorney fees and costs incurred in bringing and maintaining this interpleader action.   No rule or statute permits an interpleader plaintiff to recover its attorney fees.   Normally, this lack of authorization would preclude such a recovery.    *See, e.g., Doe v. Nixon*, 716 F.3d 1041, 1048 (8th Cir. 2013) (describing the so-called "American Rule," pursuant to which each party bears its own attorney fees unless Congress has provided "explicit statutory authority for awarding fees to a prevailing party") (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001)).   However, federal courts have traditionally relied on the equitable nature of the interpleader remedy to allow a "modest" award of attorney fees despite the lack of statutory authority.   The Eighth Circuit Court of Appeals explained as follows, over seventy years ago:

> The remedy of interpleader should, of course, be a simple, speedy, efficient and economical remedy. Under ordinary circumstances there would be no justification for seriously depleting the fund deposited in court by a stakeholder through the allowance of large fees to his counsel. The institution of a suit in interpleader, including the depositing of the fund in the registry of the court and the procuring of an order of discharge of the stakeholder from further liability, does not usually involve any great amount of skill, labor or responsibility, and, while a completely disinterested stakeholder should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred by him, the amount allowed for such fees should be modest.

*Hunter*, 111 F.2d at 557; *accord The Equitable Life Assur. Soc'y of the United States v. Miller,* 229 F. Supp. 1018, 1020-21 (D. Minn. 1964) (acknowledging that attorney fees may be recovered but noting that the awards are "generally modest").   Judge Pratt of the Southern District recently held that an interpleader plaintiff's "[r]ecoverable expenses are properly limited to the attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability

and dismissal from the lawsuit." *Van Dusseldorp v. Ho*, No. 4:13-cv-00171, 2014 WL 1047077, at *2 (S.D. Iowa Mar. 4, 2014).

Some federal courts have questioned whether attorney fees are appropriate when a stakeholder files an interpleader action to obtain the court's assistance concerning a decision arising in the normal course of business, or otherwise realizes benefits from the interpleader remedy. For example, *Sun Life Assur. Co. of Canada v. Thomas*, 735 F. Supp. 730 (W.D. Mich. 1990), presented a factual scenario analogous to that present here, with a group life insurer commencing an interpleader action after an insured died in an automobile accident. The court denied the plaintiff's request for attorney fees, stating:

> In addition to requesting a discharge from liability, Sun Life also seeks to recover the attorney's fees and costs it incurred in bringing this interpleader action. Attorney's fees and costs are to be awarded to an innocent and otherwise disinterested stakeholder who has been required to expend time and money to participate in a dispute not of his own making and the outcome of which has no impact upon him. *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 830 (S.D.N.Y.1977) (citing cases). However, courts are reluctant to award fees in cases where the claims are of the type that arise in the ordinary course of the stakeholder's business. *Id.* (citing cases).

> Conflicting claims to benefits owed to beneficiaries under an employee welfare benefit plan, such as a group life insurance policy, are inevitable. These potential conflicts are part of the business risk assumed by one who provides such policies. Given that interpleader frees the stakeholder from the vexation of multiple suits and liability, an interpleader action brought by the provider of an employee welfare benefit plan or an insurance company is brought primarily in the company's own self-interest. *Minnesota Mut. Life Ins. Co. v. Gustafson*, 415 F.Supp. 615, 618–19 (N.D.Ill.1976). Since the initiation of this action is beneficial to Sun Life and in its own self-interest, the Court denies the request for attorney's fees and costs.

*Id.* at 733. Several other federal courts have reached similar conclusions. *See, e.g., In re Mandalay Shores Coop. Hous. Ass'n*, 21 F.3d 380, 383 (11th Cir. 1994) (recognizing a "normal course of business" exception to an award of attorney fees in an interpleader

action); *Emcasco Ins. Co. v. Davis*, 753 F. Supp. 1458, 1464-65 (W.D. Ark. 1990); *Fidelity Bank v. Commonwealth Marine & Gen. Assur. Co.*, 592 F. Supp. 513, 525-26 (E.D. Pa. 1984). These authorities call into question whether Minnesota Life should recover *any* of its attorney fees and case-related expenses. However, recognizing that the Eighth Circuit has stated a "stakeholder should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred by him," *Hunter*, 111 F.2d at 557, I find that Minnesota Life is entitled to an award in some amount.

Finally, I note that "[t]he starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party seeking the award must provide evidence to support the number of the hours worked and the rate claimed. *Hensley*, 461 U.S. at 433. "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1032 (N.D. Iowa 2010) (quoting *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002)).

### b.    Discussion

Minnesota Life seeks a reimbursement of a total amount of $4,669.00, with $4,229.00 in attorney fees and $400.00 in costs. The attorney fees represent 18.1 hours of work at a rate of $240.00.[4] In support of its request, Minnesota Life has submitted a redacted copy of Billed and Unbilled Recap of Time and Billed and Unbilled Recap for costs in this matter from October 21, 2013, to the present. Doc. No. 18 at 33-36.

Hearing objects to the amount of requested attorney fees and costs. She contends the hourly rate exceeds what she claims to be the local customary rate ($150.00 to

---

[4] While $240 times 18.1 is actually $4,344.00, Minnesota Life states that it has reduced its claim to $4,229 due to a billing error. Doc. No. 18 at 15.

$200.00 per hour).  She also contends the itemization fails to adequately describe the services provided because some entries are either redacted or ambiguous.  Finally, she contends Minnesota Life should not be awarded attorney fees and costs related to discovery as these services were not performed in furtherance of the interpleader and Minnesota Life would have had to bear these costs even if had been dismissed earlier.

I find Hearing's objection to the requested hourly rate of $240.00 to be without basis.  She has offered nothing but the opinion of her own counsel as to what is "typically charged in the Sioux City, Iowa area."  Doc. No. 21 at 4.  While Hearing's counsel undoubtedly has some information concerning hourly rates in this community, he has not provided any foundation for his opinion.  Moreover, this court has approved hourly rates that are greater than the rate Minnesota Life requests.  *See, e.g.*, *DIRECTV, LLC, v. Klingenberg,* C13-4097-LTS, 2014 WL 2808222, at *9 (N.D. Iowa June 20, 2014) (approving hourly rates ranging from $250 to $350 per hour); *Fraserside IP L.L.C. v. Faragalla*, No. C11-3032-MWB, 2012 WL 453237, at *6 (N.D. Iowa Feb. 13, 2012) (approving hourly rate of $350).  Because an hourly rate of $240 is not plainly outrageous, and because Hearing has failed to submit persuasive evidence that it is excessive, I find that $240 per hour is a reasonably hourly rate for the services performed by Minnesota Life's counsel.

As for the number of hours, I have carefully reviewed Minnesota Life's itemization and find that some reduction is necessary.  Minnesota Life has redacted many of the descriptions, presumably to preserve attorney-client and/or work-product privilege.  While those redactions may be understandable, they make it difficult to determine the purpose of the services at issue.  Some of those services appear to be communications between Minnesota Life and its counsel.  Others involve discovery matters and at least two entries describe legal research concerning topics that have been redacted.

I agree with Hearing that Minnesota Life is not entitled to reimbursement for discovery-related attorney fees.  Even if Minnesota Life was not a party, it would have

been subject to discovery through the subpoena process. *See* Fed. R. Civ. P. 45. Nor will I allow Minnesota Life to recover attorney fees for attorney-client communications or unspecified legal research.

Ultimately, I have identified a total of 7.9 hours that do not clearly relate to the tasks of (a) preparing the complaint, (b) obtaining service of process on the claimants to the fund or (c) securing Minnesota Life's discharge from liability and dismissal from the lawsuit.[5] *See Van Dusseldorp*, 2014 WL 1047077, at *2. As such, I find that Minnesota Life is entitled to reimbursement for 10.2 hours of attorney time, at the rate of $240.00 per hour, for a total attorney fee award of $2,448.00. I further find that Minnesota Life is entitled to recover the removal filing fee of $400.00 (Hearing does not argue otherwise). Minnesota Life is therefore entitled to reimbursement for attorney fees and expenses totaling $2,848.00.

**B.** **The Motion to Dismiss/Motion for Summary Judgment[6]**

**1.** **Arguments of the Parties**

Hearing argues Holloway's counterclaim must be dismissed for failure to state a claim upon which relief can be granted, or in the alternative, summary judgment should be granted in favor of Hearing on Holloway's counterclaim.[7] Hearing argues there is no evidence demonstrating Jon ever attempted to comply, much less complied, with the requirements for changing a beneficiary under the policy. Hearing acknowledges that

---

[5] To be clear, this does not mean that any of the legal services performed and billed by Minnesota Life's counsel were unnecessary or improper. My reduction of the number of reimbursable hours is based entirely on the limited scope of legal services for which an interpleader plaintiff is entitled to recover.

[6] Minnesota Life takes no position on this motion. Doc. No. 28.

[7] Hearing does not expressly request the entry of summary judgment in her favor on her own claim. However, Hearing's claim would be the only remaining claim to the proceeds if Holloway's counterclaim is dismissed, which would entitle her to judgment.

the relevant policy provision and other documents she relies on are outside the pleadings, so the motion may be better characterized as a motion for summary judgment.[8]

Holloway agrees that Hearing's motion should be considered as a motion for summary judgment. She contends that due to Hearing's failure to comply with local rules, she is unable to address the grounds and material facts upon which Hearing relies.[9] She also argues summary judgment is improper at this time as she has not had the opportunity to conduct pretrial discovery. She points out that she served her first set of interrogatories, request for admissions and request for production of documents on Hearing on June 5, 2014, and had not received a response as of June 19, 2014. She contends the responses to these discovery requests will materially bolster her counterclaim. As to the merits, Holloway contends the policy language allows a beneficiary change request after the insured has died and all the requirements were fulfilled when Minnesota Life received the handwritten note on July 8, 2013. Alternatively, Holloway argues the court should impose a constructive trust on the proceeds in favor of Holloway as the intended beneficiary.

---

[8] Hearing's motion fails in multiple ways to comply with the Federal Rules of Civil Procedure and this court's Local Rules. She filed a "Statement of Material Facts" which is only an excerpt from the policy. Doc. No. 22-1 at 3. It does not set forth each material fact as to which she contends there is no genuine issue to be tried. *See* Local Rule 56(a)(3). Her motion does not contain an appendix demonstrating how each allegedly-undisputed fact is supported by the record. *See* Local Rule 56(a)(4) and Fed. R. Civ. P. 56. Nor did Hearing file a separate motion and brief. *See* Local Rules 7(d). Hearing later supplemented her motion with supporting documents, but still failed to file a legitimate Statement of Material Facts. Doc. No. 25. While none of this is excusable, the relevant facts are not complex and have been heavily referenced by the parties in their briefs. As such, I am able to ascertain the basis of Hearing's motion despite her chronic failure to follow the applicable rules.

[9] Because Hearing did not file a Statement of Material Facts that conformed to Local Rules, Holloway filed her own Statement of Material Facts, Doc. No. 24-4, to which Hearing then responded with supporting documentation. Doc. Nos. 33 at 3-7, 33-1.

## 2.    *Applicable Standards*

Because Hearing's motion relies on evidence outside the pleadings, I will consider it as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

"An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49 (citation and internal quotation marks omitted). The party moving for entry of summary judgment

bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### 3. *Undisputed Facts*

Applying these standards, I must assume that the following facts are true for purposes of considering Hearing's motion:

Jon purchased the policy from Minnesota Life in 1998 and designated Hearing as the sole beneficiary. He purchased the policy in response to a dissolution decree that (a) directed him to pay child support until Holloway reached the age of 18 or graduated from high school, whichever occurred later, and (b) required that he "maintain life insurance

on his life in the sum of $100,000, payable to the children as equal beneficiaries until his support obligation is closed." The life insurance application stated that Jon was "Naming sister as beneficiary so wife can't control the death proceeds." Jon's support obligation ended, at the latest, five years before his death.

The policy includes the following provision:

> Can you change the beneficiary?
>
> Yes. If you have reserved the right to change the beneficiary, you can file a written request with us to change the beneficiary. If you have not reserved the right to change the beneficiary, the written consent of the irrevocable beneficiary will be required.
>
> Your written request will not be effective until we record it in our home office. After we record it, the change will take effect as of the date you signed the request. However, if the insured dies before the request has been so recorded, the request will not be effective as to those death proceeds we have paid before your request was so recorded.

Jon died on June 28, 2013. Holloway is his sole surviving child. When Jon died, the policy still designated Hearing as the sole beneficiary. Jon took no steps, before his death, to notify Minnesota Life of any intention to change the beneficiary. He did, however, intend for Holloway to be the policy's beneficiary. He authored a handwritten note, which he signed and dated September 18, 2012, that expressed this intention (among other things). The note was found on or near his body after his death. Holloway submitted the note to Minnesota Life about ten days after Jon's death.

### 4. *Discussion*

To prevail on her counterclaim, Holloway must prove that: (1) Jon expressed a clear intention to change his beneficiary designation to make her the beneficiary and (2) he did all that he could to notify Minnesota Life of his request in the manner provided in

the policy. *See Jacobs v. Abraham Lincoln Life Ins. Co.*, 274 N.W. 879, 883 (Iowa 1937).[10] Even assuming the handwritten note is authentic, and actually expresses Jon's intention to make Holloway the beneficiary, her counterclaim fails based on the second requirement.

Under Iowa law, "where the by-laws or constitution of a mutual benefit society provide a method of making a change of beneficiary, that method must be pursued by a member making such change or designation." *Thomas v. Locomotive Engineers' Mut. Life & Acc. Ins. Ass'n*, 183 N.W. 628, 637 (Iowa 1921); *Miller v. Miller*, 205 N.W. 870, 872 (Iowa 1925) ("The law is well settled in this state that, where a method of changing beneficiary is contained in the policy, such method is exclusive and must be followed, and that a change cannot in such a case be made by will."); *Ehlerman v. Bankers' Life Co.*, 200 N.W. 408, 409-10 (Iowa 1924) ("Subject to certain well-defined exceptions, a change of beneficiary can be accomplished only by a strict compliance with the provisions of the policy."). The "well-defined exceptions" are as follows:

> (1)      If the society has waived strict compliance with its own rules, and in pursuance of a request of the insured to change his beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued
>
> (2)      If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made.
>
> (3)      If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued.

*Jacobs*, 274 N.W. at 881-82.

---

[10] No party has argued that the laws of any state other than Iowa apply to this dispute.

Under the first exception, Iowa law recognizes that the technicalities expressed in the policy are for the benefit of the insurance company, and by interpleading, the company waives strict compliance with the policy provisions. *See Thomas*, 183 N.W. at 634-36 (acknowledging that "most of the rules with respect to making a change of beneficiaries . . . are intended for the benefit of the insurer" and "by interpleading and bringing the money into court, the company waived technicalities required in the by-law."). Because I have found that interpleader is appropriate, only substantial compliance is required.

The Iowa Supreme Court has approvingly-cited the following as a summary of Iowa's "substantial compliance" doctrine:

> It is apparently the law in Iowa that where it appears that an insured clearly intended to change the beneficiary named in a policy of insurance permitting such a change, and that prior to his death he gave written notice to the insurer of the change intended, the law will give effect to the change although the insured has not complied with all of the formalities specified in the contract for effecting a change of beneficiary, provided his failure in that regard was excusable under all the circumstances. In other words, proof of clear intent, plus written notice to the insurer prior to death, appears to be enough, under Iowa law, to effect the desired change, where the failure to meet all the requirements is excusable.

*Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 105 (Iowa 2012) (quoting *Franck v. Equitable Life Ins. Co.*, 203 F.2d 473, 476-77 (8th Cir. 1953)). As the Court in *Pitts* noted, "there are significant differences between requiring a plaintiff to show substantial compliance with the terms of the policy and merely showing plaintiff was the intended beneficiary of a life insurance policy." *Pitts*, 818 N.W.2d at 105.

The Minnesota Life policy at issue contains the following provision:

> If you have reserved the right to change the beneficiary, you can file a written request with us to change the beneficiary. If you have not reserved the right to change the beneficiary,

the written consent of the irrevocable beneficiary will be required.

Your written request will not be effective until we record it in our home office. After we record it, the change will take effect as of the date you signed the request. However, if the insured dies before the request has been so recorded, the request will not be effective as to those death proceeds we have paid before your request was so recorded.

Doc. No. 20 at 15. Hearing has not argued that the insured did not reserve the right to change the beneficiary. The policy, at minimum, requires the "owner of the policy as shown in the application" to file[11] a "written request" (defined as "[a] request in writing signed by you."). Doc. No. 25 at 10. Holloway relies solely on the last sentence of the policy provision to argue that it contemplates recording a written request after the insured's death. While that may be true, the policy is silent as to whether the request may be filed or received by the company after the insured's death. I find that such an interpretation would be contrary to Iowa law.

As stated above, Iowa courts interpreting change of beneficiary requests have required both: (1) that the insured expressed a clear intention to change the beneficiary and (2) that the insured did all that he or she could to notify the insurance company of his or her request in the manner provided in the policy. *See Jacobs*, 274 N.W. at 883 (noting that "[a] mere intention on the part of the member to change beneficiary, not acted upon in the manner required by the constitution of the association during the lifetime of the member is ineffectual. . . ."); *Franck*, 203 F.2d at 476-77 ("proof of clear intent, plus written notice to the insurer prior to death, appears to be enough, under Iowa law, to effect the desired change, where the failure to meet all the requirements is

---

[11] Neither party has suggested how "file" is defined under the policy nor is it contained in the policy definitions provided. *See* Doc. No. 25 at 10.

excusable.")[12]; *Thomas*, 183 N.W. at 636 ("a change of beneficiary, in order to be effectual, must be in accordance with the provisions of the by-laws of the insurer, in other words, that the person desiring to have the beneficiary change must pursue the course pointed out in the constitution and by-laws of the order.").

Under the first requirement, courts have held that clear intent is not enough to change a beneficiary because the rights of the designated beneficiary become absolutely vested upon the death of the insured. *See Wandell v. Mystic Toilers*, 105 N.W. 448, 449 (Iowa 1905) ("the first beneficiary, on the death of the member without the required steps having been taken to effect a change, acquires a vested right.") (citing *Modern Woodmen of Am. v. Little*, 86 N.W. 216, 218 (Iowa 1901)). Courts have typically awarded interpleaded funds to the original beneficiary when the insurer received notice of an intent to change the beneficiary after the insured died. *See Isgrig v. Prudential Ins. Co. of Am.*, 45 N.W.2d 425, 428 (Iowa 1950) (citing cases). Such cases defeat Holloway's argument that her act of submitting the handwritten note (or purported "written request") to Minnesota Life after Jon died is enough to effect a change of beneficiary.

Iowa courts have been particularly strict with regard to the second requirement – that the insured must have done everything he or she could to comply with the policy. *See Thomas*, 183 N.W. at 634-38 (finding the insured did not do "all within his power to effect the change of beneficiary" by telling the association whom he wanted as beneficiary and why he could not send in the old certificate because he did not submit his explanation by affidavit as required by the policy); *Isgrig*, 45 N.W.2d at 427 (noting that the insured did "all he was required to do" to effect the change of beneficiary and the only requirement that was not fulfilled was the failure of the company). This interpretation is consistent with the third exception to strict compliance, which will excuse the company's failure to complete a request to change a beneficiary as long as the insured

---

[12] *Franck* suggests a third requirement in the event of substantial compliance – that the insured demonstrate an excuse for failure to meet all the requirements.

did everything possible to comply with the policy. *See also Wandell*, 105 N.W. at 449-50 ("[I]f those acts which are required by the constitution of the association to be done in order to effect the change have been done, then the change is effectual, even though some purely ministerial action remains to be done *by the officer of the association* . . . .") [emphasis added].

Here, even if the handwritten note is read as a written request to change the beneficiary to Holloway, there is no evidence that Jon attempted to comply with the requirements of the policy by filing the request with Minnesota Life. While the note is dated September 18, 2012, Holloway's attorney indicated during the hearing that it was found on Jon's person after he died on June 28, 2013. There is no evidence that Jon did *anything*, during the intervening nine months, to notify Minnesota Life of his alleged intent to change the beneficiary.

In several Iowa cases, the insured took more significant steps than Jon without successfully accomplishing a change of beneficiary. For instance, the policy at issue in *Jacobs* required the insured to pay the local recorder a fee of fifty cents, deliver the benefit certificate to him with written surrender on the back and directions as to whom to change the beneficiary to. 274 N.W. at 881. The insured paid the recorder fifty cents and executed a change of beneficiary form to change the beneficiary to her sister. The insured died later that day. *Id.* The following day, the sister took the old certificate and change of beneficiary form to the local recorder who sent the documents to the company that day. *Id.* The company denied the request because it was received after the death of the insured and the interest of the listed beneficiary had vested at the moment of death. *Id.* The court in *Isgrig* characterized such cases as examples of "unexecuted intent." 45 N.W. 2d at 428.

Holloway has not come forward with evidence of specific facts showing that Jon attempted to comply with the requirements of the policy before his death. She also did

not request more time to develop such facts under a Fed. R. Civ. P. 56(d) motion.[13] Holloway simply argues that the policy allows for a post-death submission of a written request for change of beneficiary. As explained above, this argument fails as a matter of law. The facts establish, at most, Jon's "unexecuted intent" to change his beneficiary to Holloway. This is insufficient to effect a change of beneficiary under Iowa law. Because the undisputed facts, viewed in the light most favorable to Holloway, demonstrate that Jon did not do all he could to comply with the policy requirements during his lifetime, Holloway's counterclaim fails as a matter of law.

Holloway also argues (but did not plead) that the court should impose a constructive trust for her benefit. This argument also fails as a matter of law. A constructive trust is "a remedial device by which the holder of legal title is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest." *Loschen v. Clark*, 127 N.W.2d 600, 603 (Iowa 1964) (citing 89 C.J.S. Trusts, § 138). There are three classes of constructive trusts: trusts that arise from actual fraud; trusts that arise from constructive fraud and trusts that arise from some equitable principle independent of the existence of any fraud. *Id.* A constructive trust is "an equitable remedy applied for purposes of restitution, to prevent unjust enrichment." *Estate of Wild v. Wild*, 834 N.W.2d 872, at *4 (Iowa Ct. App. 2013) (unpublished table decision) (quoting *In re Estate of Peck*, 497 N.W.2d 889, 890 (Iowa 1993)). "Other circumstances supporting imposition of equitable principles include bad faith, duress, coercion, undue influence, abuse of confidence, or any form of unconscionable conduct or questionable means by which one obtains the legal right to property which they should not in equity

---

[13] Just as I am not holding Hearing to strict compliance with applicable rules, I am not rejecting Holloway's arguments simply because she did not file a formal motion under Rule 56(d). However, I note that she has made no effort to explain how any additional discovery in this case might impact the basic, undisputed facts concerning Jon's failure to take action to notify Minnesota Life of any desire to change the beneficiary.

and good conscience hold." *Id.* (citing *In re Estate of Welch*, 534 N.W.2d 109, 111 (Iowa Ct. App. 1995)).

Overlooking the fact that Holloway failed to request this remedy in her counterclaim, Holloway has not presented evidence suggesting Hearing would be unjustly enriched by receiving the proceeds or that she otherwise became the beneficiary through unjust means. *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364 (8th Cir. 1997) (reversing district court's imposition of constructive trust in favor of daughter who was intended beneficiary, but not designated beneficiary, because facts did not establish undue influence by designated beneficiary). She has only alleged that she was the intended beneficiary. "[D]isappointment of a mere expectation does not justify the imposition of a constructive trust." *See Estate of Farrell*, 461 N.W.2d 360, 361 (Iowa Ct. App. 1990) (affirming district court's refusal to impose a constructive trust on pension proceeds in favor of all children where father designated only one child as beneficiary even though court believed father intended to distribute proceeds to all children).

Jon designated Hearing as the sole beneficiary fifteen years before his death. His obligation to maintain life insurance for Holloway's benefit expired at least five years before he died. There is no evidence that he did anything, during those extended periods of time, to effectuate a change of beneficiary. Nor is there evidence that Hearing did anything to prevent Jon from taking such action. In the absence of facts suggesting unconscionable conduct that the court should correct, the equitable remedy of a constructive trust is clearly inappropriate as a matter of law. Holloway has no valid claim to the life insurance proceeds, either directly or through a constructive trust.

## IV.    CONCLUSION

For the foregoing reasons, Minnesota Life's motion (Doc. No. 18) to deposit funds, recover attorney fees and costs and be dismissed with prejudice is **granted**. Minnesota Life may deduct $2,848.00, representing its reasonable attorney fees and costs

incurred in connection with this interpleader action, from the amount of $92,938.14 plus any applicable interest. The remainder shall be promptly deposited with the Clerk of Court. Upon depositing the proceeds, Minnesota Life will be dismissed from this action with prejudice.

Hearing's motion (Doc. No. 22) to dismiss counterclaim, or in the alternative, motion for summary judgment is **granted.** Holloway's counterclaim is hereby **dismissed with prejudice.**

Because Hearing is the only remaining party with a claim to the policy proceeds, judgment shall be entered in favor of Hearing. Once Minnesota Life has deposited the net proceeds with the Clerk of Court, those funds shall be disbursed to Hearing.

**IT IS SO ORDERED.**

**DATED** this 21st day of July, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE